UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO. 5:14-CV-221-TBR-LLK

JASON VAUGHAN                                                                                              PLAINTIFF

v.

YOUNGBLOOD EXCAVATING & CONTRACTING, LLC                              DEFENDANT

## OPINION AND ORDER

District Judge Thomas B. Russell referred this case to Magistrate Judge Lanny King for the disposition of all discovery disputes. (Docket # 8). Defendant requested the production of Plaintiff's medical records and Plaintiff objected to the request. (Docket # 13-1). After a telephonic status conference with the Court did not resolve the discovery dispute, the Court authorized the parties to brief the issue. (Docket # 12). Defendant filed its Motion to Compel the Production of Plaintiff's Medical Records. (Docket 13). Plaintiff filed a response brief. (Docket # 14). Defendant filed a reply brief. (Docket # 15). For the reasons stated below, the Court denies Defendant's motion, without prejudice.

## Background Facts

Plaintiff sued Defendant, his former employer, claiming violations of Kentucky and federal overtime-pay laws. (*See* Docket # 1, pp. 3-4). The parties agree that Defendant paid Plaintiff a salary and did not pay Plaintiff a variable overtime premium[1] based on his weekly

---

[1] The Supreme Court acknowledged that the term "overtime" does not serve as a term of art (it can mean, *e.g.*, work done outside the normally scheduled pattern, work done after a scheduled shift, or work done in excess of contract provisions but still less than forty hours in the week). *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 466 (1948). "Overtime premium" can mean additional compensation for working beyond a specified number of hours, by contract or statue, in a day or week. *Id.* at 450 n.3. For the purposes of this opinion, "overtime" means hours worked in excess of forty in any given workweek and "overtime premium" means the additional compensation required by statue for work in excess of forty hours in any workweek.

hours worked. (Docket # 13, p. 2). The parties dispute Plaintiff's entitlement to overtime pay, both as a matter of law and fact, as well as the number of potential overtime hours Plaintiff allegedly worked. *Id.* While Defendant devoted part of its brief arguing that the Fair Labor Standards Act (FLSA) did not apply to Plaintiff or the parties had a valid *Belo* contract[2] (Docket ## 13, 15), the Court will not decide those dispositive issues when considering a discovery motion. *See United States v. 216 Bottles*, 36 F.R.D. 695, 699-700 (E.D.N.Y. 1965). The Court need not consider these arguments because the parties' claims and defenses dictate the boundaries of discovery. Fed. R. Civ. P. 26(b)(1). Plaintiff pled federal- and state-law claims for a failure to pay overtime wages. (Docket # 1). Generally speaking, Defendant can discover evidence relevant to those claims.

Defendant sought, by a request for production, Plaintiff's "medical records for the period of time that [he] worked for" Defendant as well as a signed HIPAA release form. (Docket # 13-1). Plaintiff objected, stating that his medical condition was not at issue in this litigation and the request was "beyond the scope of discovery." *Id.*

## Discovery of Relevant Evidence

Absent a court order, a party may discover nonprivileged information relevant to any claim or defense in the case. Fed. R. Civ. P. 26(b)(1). Relevance presents a lower hurdle than admissibility at trial. *Id.* Generally speaking, courts should construe Rule 26 relevance broadly. *Invesco Inst'l (N.A.), Inc. v. Paas*, 244 F.R.D. 374, 380 (W.D. Ky. 2007). As the party resisting discovery, Plaintiff bears the burden of refuting the relevance of the discovery sought or demonstrating that the records have "such marginal relevance that the potential harm resulting from production outweighs the presumption in favor of broad disclosure." *Id.*

---

[2] *See generally* 29 U.S.C. § 207(f) (2012); 29 C.F.R. §§ 778.402-.414 (2015); *Walling v. A.H. Belo Corp.*, 316 U.S. 624 (1942).

The pleadings do not establish immediately apparent relevance of Plaintiff's medical records. (*See* Docket ## 1, 19). Defendant relied on one case in its motion, the Eastern District of Michigan's unpublished opinion in *Williams*. The *Williams* opinion stands for the proposition that when a party puts his or her medical condition at issue, his or her medical records have relevance to the litigation. *E.g.*, *Williams v. Birkett*, No. 14-12755, 2015 WL 5337118, at *2 (E.D. Mich. Sept. 14, 2015). In *Williams*, the plaintiff brought a claim for damages under 42 U.S.C. § 1983 alleging a delay in medical care for a tumor on his leg violated his Eighth Amendment rights. *Id.* at *1. In the instant matter, Plaintiff did not allege facts that put his medical condition at issue. Plaintiff alleged Defendant underpaid him by not paying the overtime premium on his weekly salary. (Docket # 1). While Defendant pled an "entitle[ment] to a setoff or credit for all hours and days that Plaintiff failed to work" and argued the medical records will show times not actually worked, the affirmative defense did not put Plaintiff's medical condition at issue. (Docket # 19, p. 7).

To link the medical records and the claims or defenses in the instant case, Defendant argued that Plaintiff attended a number of medical appointments during his tenure as a salaried employee of Defendant. (Docket # 13, p. 2). First, Defendant argued that the medical records will allow it to verify the hours worked by Plaintiff or impeach his testimony on the same subject. *Id.* at 3. Second, Defendant argued that the records will speak to why Plaintiff sought salaried remuneration rather than an hourly wage. *Id.*

### Relevance of Hours Worked

Employers may pay their employees on a salaried basis. However, the law may require an employer to pay overtime wages to a salaried employee. *See e.g.*, *Lemmon v. Ayres*, 517 Fed. App'x 424, 429 (6th Cir. 2013) (stating that paying an employee on a salaried basis is necessary,

but not sufficient, to obviate the overtime-pay requirements of the FLSA) (quoting *Orton v. Johnny's Lunch Franchise*, 668 F.3d 848, 846 (6th Cir. 2012)). Assuming a salaried, non-exempt employee works more than forty hours in a week, the employer must pay the employee an overtime premium. 29 C.F.R. § 778.114 (2015). Calculating the amount of the overtime premium relies on two inputs, the employee's weekly salary and the number of hours the employee worked during the week. *Id.* The employer determines the employee's regular rate of pay for the week by dividing the weekly salary by the number of hours actually worked. *Id.* Assuming the regular rate exceeds minimum wage,[3] the employer need only additionally compensate the employee with an overtime premium for hours worked above forty in the week. *Id.*; *see also Conklin v. Joseph C. Hofgesang Sand Co.*, 407 F. Supp. 1090, 1093 (W.D. Ky. 1975) (explaining that one finds the regular rate for a non-exempt, salaried employee by dividing the salary by the actual hours worked, not by forty) (citing *Overnight Motor Co. v. Missel*, 316 U.S. 572, 580 n.16 (1942)).[4]

Because of the structure of the calculation, employers—and at a trial, the court—must determine the proper weekly pay for any salaried employee entitled to overtime pay, *i.e.*, a non-exempt, salaried employee. Therefore, evidence that tends to prove the number of hours the employee worked in any given week has relevance to the claim.

Defendant, as employer, had a duty to "make, keep, and preserve" records of the time Plaintiff worked. 19 U.S.C. § 211(c); *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946). Even if Defendant lacks "proper and accurate records" the Court may infer the hours Plaintiff worked. 328 U.S. at 687. Defendant would then have the opportunity to negate the

---

[3] Plaintiff did not allege a minimum-wage violation.
[4] An employer calculates the overtime premium by finding the employee's regular rate for the week and multiplying the resulting rate by one half the hours worked in excess of forty. The employer then pays the employee the sum of the salary and the overtime premium.

reasonableness of the inference. *Id.* Therefore, evidence tending to show that Plaintiff did not in fact work the number of hours he claimed has relevance to the instant matter, as direct proof related to liability or the measure of damages, as well as for impeachment.

Caselaw establishes that that evidence of hours worked is relevant to FLSA claims regarding overtime pay. *E.g.*, *O'Brien v. Ed Donnelly Enters.*, 575 F.3d 567, 588 (6th Cir. 2009) (holding evidence that the employer altered timesheets relevant for discovery purposes, regardless of any valid reason for the edits); *Hodgson v. Am. Concrete Const. Co.*, 471 F.2d 1183, 1186 (6th Cir. 1973) (holding evidence tending to show time worked off the clock relevant, even if estimates). In line with that well-established precedent, the Court finds that evidence related to the hours worked by Plaintiff is relevant to the instant matter. However, the Court must still assess the relevance of Plaintiff's medical records as proof of the hours Plaintiff worked.

### Proving Hours Worked

In the context of the instant dispute, the Court notes that time spent on sick leave, paid or not, or similar activities related to personal health does not count as time worked when one calculates the regular rate or the overtime premium. *See Aiken v. City of Memphis*, 190 F.3d 753, 760 (6th Cir. 1999); *see also* 29 C.F.R. § 785.43 (2015) (stating that an employer need only compensate an employee for medical attention if received on the employer's premises or at its direction during working hours). Therefore, if Plaintiff claimed he was working when he was actually receiving medical care, some of the information related to the visit has relevance, namely the date, time, and duration of any consultation or treatment for weeks when Plaintiff claimed unpaid overtime premiums.

5

Defendant did not offer paid sick leave to Plaintiff. (Docket # 13, p. 3). However, because Defendant paid Plaintiff on a salaried basis, his weekly pay remained the same if he worked less than forty hours. An employer may reduce a salary for full-day or longer absences due to sickness made "in accordance with a bona fide plan, policy or practice." 29 C.F.R. § 541.602(b)(2). However, Defendant did not argue in its briefing any full-day or longer absences by Plaintiff. While hours Plaintiff spent receiving medical care did not reduce his base salary, they also did not count as hours worked for the purposes of calculating any overtime premium due Plaintiff. Nonetheless, if Plaintiff actually worked more than forty hours in a week, then Defendant may have had an obligation to pay him an overtime premium, regardless of when and for how long he received medical care.

For these reasons, evidence related to the time Plaintiff spent receiving medical care, at least to the extent he claimed unpaid overtime wages for that workweek, has discovery relevance in this case. However, that conclusion alone does not resolve the instant discovery dispute. Defendant must demonstrate that the records will provide evidence of when Plaintiff worked. As explained below, the breadth of Defendant's request and Plaintiff's privacy interest in his medical records counsel against allowing Defendant to discover the records.

The Court recognizes that examining the entirety of Plaintiff's medical records may give some, limited insight into when Plaintiff worked and did not work. But that speculation does not suffice to demonstrate the relevance of the entirety of Plaintiff's medical records. Defendant failed to demonstrate a clear link between its time records and Plaintiff's medical records that will allow more than mere speculation as to the hours worked by Plaintiff on any given day. Defendant argued that comparing its timesheets with medical records indicating appointment times (assuming the medical records contain this information) may reveal falsely claimed hours.

(Docket # 13, p. 3). However, Defendant failed to offer any explanation of how this comparison would reveal the discrepancies. As Plaintiff argued, generally speaking, the vast majority of the contents of an individual's medical records speak to the patient's medical condition, not the time spent receiving care. (Docket #14, p. 4). Plaintiff's medical condition is not at issue in this matter. Therefore, Defendant's request exceeds the scope of discovery by seeking documents that will not speak to Plaintiff's treatment time during weeks where an overtime-pay dispute exists. Moreover, the request is overly broad on its face, as it seeks documents for the entire time Defendant employed Plaintiff, which included a time when Plaintiff received an hourly wage and for which he does not seek damages (*i.e.*, before July 23, 2011).

Moreover, Defendant's request invades Plaintiff's privacy interest in his medical records. For example, Congress established a privacy interests in medical information, including (at least to some extent) Plaintiff's records. Defendant seeks all of Plaintiff's medical records for the time Plaintiff worked for Defendant. (Docket # 13-1). But HIPAA regulations concerning the authorization of records release require a party to "identif[y] the information in a specific and meaningful fashion." 29 C.F.R. § 164.508 (2015). Defendant's request, which seeks much information that will not speak to when Plaintiff worked, does not identify information in a specific and meaningful way.

Considering the breadth of Defendant's request, the privacy interests implicated, the limited value of the whole of the documents sought, and the speculative nature of Defendant's theory of the documents' relevance, the Court denies Defendant's motion. While evidence related to the time Plaintiff spent receiving medical care has relevance in this matter, Defendant cast the widest possible net to obtain that information. Discovery must be proportional to the needs to the case. Fed. R. Civ. P. 26(b)(1). The Court and parties must also employ the Federal

7

Rules of Civil Procedure to "secure the just, speedy, and inexpensive determination" of this case. Fed. R. Civ. P. 1. Moreover, the Court has "broad discretion to determine the boundaries of inquiry." *Janko Enters. v. Long John Silver's, Inc.*, No. 3:12-CV-345-S, 2013 WL 5308802, at *2 (W.D. Ky. Aug. 19, 2013). The Court finds that Plaintiff met his burden of demonstrating that Defendant's request to produce exceeded the scope of discovery.

Defendant is entitled to discover some information about when Plaintiff received medical care to confirm or refute his reported time worked. Defendant does not have free license to access all of Plaintiff's medical records. The Court believes that posing an interrogatory to determine when Plaintiff received medical care and for how long provides a significantly more appropriate means of seeking the discoverable information contained in any medical records. This means of discovery protects Plaintiff's privacy and tailors the inquiry to relevant evidence. Because Plaintiff has possession, custody, or control of his medical records, he and his attorney will be able to consult those records, as well as other records and recollections, in crafting an answer to a narrowly tailored interrogatory seeking medical appointment time and length. The Court has "broad discretion in determining the contours of discovery" in this manner. *Dickson v. Nat'l Maint. & Repair of Ky., Inc.*, No. 5:08-cv-8, 2011 WL 2610195, at *2 (W.D. Ky. July 1, 2011) (citing *Waters v. City of Morristown*, 242 F.3d 353, 363 (6th Cir. 2001)). Moreover, during the Court's teleconference with the parties, Plaintiff offered to provide information in this manner to resolve the discovery dispute.

Because Defendant may develop a record that demonstrates that limited discovery of some medical records is relevant, the Court will deny Defendant's motion, without prejudice, in favor of Defendant first pursuing the information via interrogatory.

### Relevance of Why Defendant Paid Plaintiff a Salary

Defendant also argued that Plaintiff's medical records have relevance to the issues of if and why Plaintiff requested pay on a salaried basis. (Docket # 13, p. 3). Defendant did not demonstrate that these issues have relevance in the instant litigation. The parties agree that, for whatever reason, Defendant promised to pay Plaintiff a salary, which Plaintiff accepted. (Docket ## 13, p. 2; 14, p. 2). Parties cannot waive overtime-pay rights stemming from the FLSA. *Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981). As the parties to the instant action agreed to a salary, they must operate under the requirements of the FLSA regardless of why or if Plaintiff requested that pay basis. The Court finds that Plaintiff met his burden of demonstrating that Defendant's request to produce exceeded the scope of discovery. *Invesco Inst'l (N.A.), Inc.*, 244 F.R.D. at 380. As Plaintiff argued and Defendant did not refute, the reasons for entering into an agreement for salary-based pay does not speak to any of the claims or defenses pled in this case.

### ORDER

IT IS HEREBY ORDERED that the Court denies Defendant's Motion to Compel the Production of Plaintiff's Medical Records, without prejudice. (Docket # 13).

c: Counsel